74 F.3d 1259
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Curt M. READ, Petitioner,
v.
DEPARTMENT OF TRANSPORTATION, Respondent.
 No. 95-3437.
 United States Court of Appeals, Federal Circuit.
 Jan. 11, 1996.
 
 Before MICHEL, Circuit Judge, NIES, Senior Circuit Judge, and LOURIE, Circuit Judge.
 DECISION
 PER CURIAM.
 
 
 1
 Curt M. Read appeals from the November 7, 1994 initial decision of the Merit Systems Protection Board ("Board"), No. SE-0752-94-0602-I-1, sustaining the Federal Aviation Administration's ("FAA") decision to remove Read after revocation of his security clearance. The initial decision became final when, on March 23, 1995, the full Board denied Read's petition for review, after which this appeal timely followed. The case was argued on December 8, 1995. Because the FAA's revocation of Read's security clearance was lawful and no procedural defect in his removal has been shown, we affirm.
 
 DISCUSSION
 
 2
 Read concedes, as he must, that the Supreme Court's decision in Department of the Navy v. Egan, 484 U.S. 518 (1988), precludes him from challenging before the Board the substance of the FAA's underlying decision to revoke his security clearance. Id. at 530. Read's sole contention on appeal is that the FAA was without authority to investigate him and, on the basis of its findings, revoke his security clearance. Specifically, he contends that the investigation and subsequent revocation were contrary to Executive Order 10450 ("E.O. 10450"), 3 C.F.R. 936 (1949-1953 Comp.). Because we conclude, however, that the challenged acts of the FAA were not ultra vires, the Board's decision must be affirmed.
 
 
 3
 According to Read, section 8(b) of E.O. 10450, id. at 938, confers upon the Office of Personnel Management ("OPM") "exclusive jurisdiction to undertake the [security clearance] investigation of a specific employee ... unless and until such authority is specifically delegated by law or agreement to a particular agency." The parties do not dispute that no such delegation, by statute or agreement, has been made to the FAA or the Department of Transportation, of which the FAA is a part.
 
 
 4
 Read's proffered interpretation of E.O. 10450 is entirely unpersuasive. Section 2 of E.O. 10450 instructs that "[t]he head of each department and agency of the Government shall be responsible for establishing and maintaining within his department or agency an effective program to insure that the employment and retention in employment of any civilian officer or employee within the department or agency is clearly consistent with the interests of the national security." 3 C.F.R. at 936-37. In other words, the head of each agency is expressly charged with the duty to protect the classified information that passes before the eyes of those who work under his or her command. This delegation of responsibility necessarily carries with it the power to assume and discharge it; to conclude otherwise would render the section a nullity.*
 
 
 5
 The delegation of section 2, under which the FAA was clearly empowered to act in this case, is neither limited nor modified by the delegation of shared responsibility and power to the OPM. Section 8(b) does not divest agency heads of the power just conferred upon them by section 2 by rendering OPM "primarily" responsible for employment-related clearance investigations. Instead, section 8(b) makes shared power and responsibility over security clearance investigations the baseline; departures therefrom, in which the agency or department retains exclusive authority to investigate its employees without any further role for OPM, are undertaken "pursuant to" an additional statute or agreement. Id. at 938. Nothing in 5 C.F.R. part 736 is to the contrary. Indeed, Read proffers no direct or indirect authority, and we have found none, supporting his contention regarding the legal effect of section 8(b).
 
 
 6
 In sum, the FAA was legally authorized by E.O. 10450 to investigate Read and to revoke his security clearance on the basis of its findings. No other procedural defect having been shown, the decision of the Board sustaining his removal must be and is affirmed.
 
 
 
 *
 Read sets against this proposition the argument that E.O. 10450 "merely contains a general grant to agency heads to establish programs to insure national security. It includes no grant of authority to investigate specific employees in regards to national security concerns." Such word play is unavailing. Section 2 of the Order expressly makes agency heads responsible for the maintenance of "effective program[s]" (emphasis added), not impotent ones